# EXHIBIT 5

*PERSONAL AND CONFIDENTIAL*

March 1, 2018

Honeywell International Inc.
115 Tabor Road
Morris Plains, NJ 07950
[USA]
Attention: Ajit Salvi VP M&A PMT

Ladies and Gentlemen:

    Honeywell International Inc. ("Honeywell") has requested information from **LOCUS Technologies** (the "Seller") in connection with its consideration of the possible acquisition of **LOCUS Technologies** (the "[Company/Business]"), or other related transaction (a "Transaction").  As a condition of the furnishing of such information to Honeywell, Honeywell agrees, as set forth below, to treat confidentially such information that either the Seller, the Company/Business or their respective directors, officers, agents, employees or representatives furnish to Honeywell after the date hereof, whether furnished orally or in writing or gathered by inspection, and regardless of whether specifically identified as "confidential," together with analyses, compilations, studies or other documents prepared by Honeywell or its officers, directors, agents, representatives (including attorneys, accountants and financial advisors) or employees (collectively, "Representatives") which contain or otherwise reflect such information (collectively, the "Confidential Information").  The term "Confidential Information" does not include information which (i) becomes generally available to the public other than as a result of a disclosure by Honeywell or its Representatives in breach of this agreement, (ii) was available to Honeywell on a non-confidential or non-restricted use basis prior to its disclosure to Honeywell by the Seller or the Company/Business or their Representatives, (iii) was or becomes available to Honeywell from the Seller or the Company/Business pursuant to a commercial collaboration in the ordinary course of business unrelated to the consideration of the Transaction and subject to a separate obligation of confidentiality to the Seller or the Company/Business, (iv) becomes available to Honeywell on a non-confidential or non-restricted use basis from a source other than the Seller or the Company/Business or their Representatives, provided that to the knowledge of Honeywell such source is not prohibited from disclosing such information to Honeywell by a legal obligation, or (v) is independently developed by Honeywell without reference to the Confidential Information.

    Honeywell agrees not to use any of the Confidential Information for any purpose other than the purpose of evaluating the possibility of a Transaction.  Honeywell agrees that it and its Representatives shall not disclose such Confidential Information; provided, however, that any of such Confidential Information and Transaction Information (as defined below) may be disclosed to those of Honeywell's Representatives who need to know such Confidential Information or Transaction Information for the purpose of evaluating a possible Transaction so long as such Representative agrees to be bound by the terms hereof.  Honeywell will be responsible for any breach of this agreement by Honeywell's Representatives.  Honeywell agrees, at Honeywell's

167090

sole expense, to take all reasonable measures to restrain Honeywell's Representatives from disclosure or use of the Confidential Information and Transaction Information in violation of this agreement.

Without the prior written consent of the other party hereto, and neither Seller (or holders of ownership interests in Seller) nor Honeywell will (and each of Seller and Honeywell will cause their respective Representatives not to) disclose to any person (other than as provided herein) (x) the fact that Confidential Information has been provided to Honeywell or that discussions or negotiations are taking place concerning a possible Transaction involving Honeywell or (y) any of the terms and conditions with Honeywell or other facts with respect to any possible Transaction involving Honeywell], including the status thereof (collectively, "Transaction Information"); *provided* that the foregoing limitation and the provisions of the immediately following paragraph shall not apply (i) to information about the Transaction that is publicly available (other than as a result of disclosure by Honeywell in breach of this agreement) and does not make reference to Honeywell's involvement and (ii) to any public disclosure requirements under applicable securities laws or regulations or the terms of any agreement with an exchange on which Honeywell's or Seller's securities are listed, on the understanding that the disclosing party shall, where practicable, provide the other party with advanced notice of such disclosure and consider any reasonable comments of the other party with respect to such disclosure. The term "person" as used in this letter shall be broadly interpreted to include without limitation any corporation, company, partnership, trust, individual, or other entity. Notwithstanding the foregoing, if either the Seller or Honeywell makes an affirmative disclosure of a possible Transaction in breach of this agreement, the other party shall have the right to make a public response reasonably necessary to correct any misstatement, inaccuracies or material omissions in the initial and wrongful affirmative disclosure.

Except as otherwise provided for in the immediately preceding paragraph regarding Transaction Information, if Honeywell or its Representatives should be required by any law or regulation (including, without limitation, written interrogatories, subpoena, civil investigative demand or similar process) or the rules of any exchange on which Honeywell's securities are listed to disclose any Confidential Information or Transaction Information, it is agreed that Honeywell will provide the Seller with prompt written notice of such requests (to the extent practicable) so that the Seller may seek an appropriate protective order and/or waive Honeywell's compliance with the provisions of this agreement. It is further agreed that, if in the absence of a protective order or the receipt of a waiver hereunder, Honeywell or its Representatives are nonetheless required to disclose Confidential Information or Transaction Information to or at the direction of any governmental authority, Honeywell or its Representatives, as applicable, may so disclose such Confidential Information or Transaction Information without liability hereunder. For the purpose of the foregoing, any information disclosed in the context of litigation between Honeywell and its Representatives, on the one hand, and the Business, the Seller or their Representatives, on the other hand, with respect to the subject matter of this letter agreement or the Transaction that is reasonably related to proving the claim or claims made by any party to such litigation (or any defenses to such claim(s)) in such

litigation shall be deemed Confidential Information or Transaction Information required to be disclosed by legal process and may be disclosed without liability hereunder.

At any time upon written notice from the Seller, Honeywell will promptly, in its sole discretion, either (x) deliver the Confidential Information to the Business or (y) destroy the Confidential Information and, upon a written request from us, provide certification as to such destruction; provided, that Honeywell shall be allowed to retain such copies of the Confidential Information as are necessary to meet any legal or regulatory requirements or internal audit or internal compliance requirements, or copies created pursuant to automatic archiving and back-up procedures, provided that such retained copies of the Confidential Information shall continue to be held subject to the confidentiality provisions contained in this letter agreement. Notwithstanding the foregoing, that portion of Confidential Information which consists of analyses, compilations, studies or other documents prepared by Honeywell, or by Honeywell's Representatives, and containing or reflecting such Confidential Information, will be retained by Honeywell and kept confidential and subject to the terms of this agreement.

Without the Seller's prior written consent, and in the event Honeywell does not acquire the Company/Business, Honeywell will not for a period of two years from the date hereof directly or indirectly solicit for employment any person about whom Honeywell learns as a result of its consideration of a Transaction and who is now employed by the Company/Business (or whose activities are dedicated to the Company/Business) in an executive or technical position or otherwise considered a key employee; provided, however, that the foregoing shall not be deemed to prevent Honeywell from soliciting or employing (x) any person who is no longer employed by the Company/Business and who terminates such employment without inducement to do so by Honeywell and (y) any person employed by the Business (or whose activities are dedicated to the Business) who responds to a general solicitation for employment placed by Honeywell on the internet or in a newspaper, magazine or other publication or is solicited pursuant to a search conducted by an executive search firm not specifically targeted at such person.

Although Honeywell understands that the Seller has endeavored to include in the Confidential Information material known to the Seller which the Seller believes to be relevant for the purpose of Honeywell's investigation, Honeywell understands that Seller does not make any representation or warranty as to the accuracy or completeness of the Confidential Information. Honeywell agrees that neither the Seller nor the Company/Business nor any of their directors, officers, employees, agents or representatives shall have any liability to Honeywell or any of Honeywell's representatives resulting from the use of the Confidential Information by Honeywell or such representatives. The Seller reserves the right, in its sole discretion, to change the procedures relating to Honeywell or any other person, to reject any and all proposals made by Honeywell or any of Honeywell's representatives with regard to a Transaction, and to terminate discussions and negotiations with Honeywell at any time and for any reason. Except as expressly set forth herein, unless and until a written definitive agreement concerning a Transaction has been executed, neither Seller, Honeywell nor any of their respective directors,

officers, agents, employees or representatives will have any liability to the other party hereto with respect to a Transaction, whether by virtue of this letter agreement, any other written or oral expression with respect to a Transaction or otherwise.

It is further understood and agreed that no failure or delay by any party in exercising any right, power or privilege hereunder shall operate as a waiver thereof nor shall any single or partial exercise thereof preclude any other or further exercise thereof or the exercise of any right, power or privilege hereunder. Honeywell and Seller also understand and agree (x) that the other party's breach of this agreement may result in irreparable harm to the Seller and/or the Company/Business on the one hand, or Honeywell and its affiliates, on the other hand, (y) that money damages may not be a sufficient remedy for any breach of this agreement by either party or their respective directors, officers, agents, representatives or employees, and (z) that Seller or Honeywell, as the case may be, may be entitled to specific performance and injunctive relief as remedies for any such breach. Such remedies shall not be deemed to be the exclusive remedies for a breach of this agreement by Honeywell, Seller or their respective directors, officers, agents, representatives or employees, but shall be in addition to all other remedies available at law or equity.

This letter agreement shall be governed and construed in accordance with laws of the State of New York applicable to contracts made and performed therein without regard to the principles of conflicts of laws. This agreement shall not be assigned by any party hereto without the express written consent of the other party, provided that the portion of this agreement relating to the Company/Business may be assigned by the Seller to any purchaser of the Company/Business, and Honeywell shall thereby be released of any liability or obligation to the Seller to the extent of such assignment. This agreement may be signed in counterparts which, taken together, shall constitute one and the same instrument. All obligations under this agreement shall terminate upon the earlier of (i) the eighteen month anniversary of the date of this agreement or (ii) the execution of a definitive written agreement relating to the Transaction.

If Honeywell is in agreement with the foregoing, please sign and return one copy of this letter which will constitute the entire agreement of the parties with respect to the subject matter of this letter.

Very truly yours,

LOCUS Technologies

Digitally signed by com.apple.idms.appleid.prd.796f37574f42
68673167596d465974304b6e717532513d
3d
DN:
cn=com.apple.idms.appleid.prd.796f37574
f4268673167596d465974304b6e71753251
3d3d
Date: 2018.03.05 10:41:30 -08'00'

By: Neno Duplan
Title: CEO & Founder

Confirmed and Agreed To:

HONEYWELL INTERNATIONAL INC.

_____
By: Ajit Salvi
Title: Vice President - Mergers & Acquisitions