UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| LOCUS TECHNOLOGIES, | : |
| | : |
| Plaintiff, | : Case No. 1:19-cv-11532-PGG-KHP |
| | : |
| v. | : Judge Paul G. Gardephe |
| | : |
| HONEYWELL INTERNATIONAL INC., | : |
| | : |
| Defendant. | : |

# DEFENDANT HONEYWELL INTERNATIONAL INC.'S
# REPLY IN SUPPORT OF MOTION TO DISMISS

Christine M. Haaker (OH #0063225)
Admitted *Pro Hac Vice*
Sean P. McCormick (OH #0088281)
Admitted *Pro Hac Vice*
THOMPSON HINE LLP
10050 Innovation Drive, Suite 400
Miamisburg, Ohio 45342
Telephone:  937.443.6822
Facsimile:  937.443.6635
Christine.Haaker@ThompsonHine.com
Sean.McCormick@ThompsonHine.com

Emily J. Mathieu
THOMPSON HINE LLP
335 Madison Avenue, 12th Floor
New York, NY 10017
Telephone:  212.344.3963
Facsimile: 212.344.6101
Emily.Mathieu@ThompsonHine.com

*Attorneys for Defendant Honeywell International Inc.*

**TABLE OF CONTENTS**

**TABLE OF CONTENTS** ................................................................................................................ i

**TABLE OF AUTHORITIES** ......................................................................................................... ii

**I.     LAW AND ARGUMENT** ...................................................................................................1

    A.     The 2012 EIM Order Form Expired and The Parties Did Not Agree
          to Any Extension of its Terms ..................................................................................1

    B.     The EIM Agreement Terminated and Honeywell Does Not Owe Locus
          Anything Further .......................................................................................................3

          1.     The written contract documents clearly demonstrate that
                Honeywell does not owe Locus for the EIM Second Half
                Invoice. ...........................................................................................................3

          2.     The written contract documents clearly demonstrate that
                Honeywell does not owe Locus for the EIM Termination
                Invoice. ...........................................................................................................4

          3.     Honeywell does not owe Locus for the ePortal Invoice. ............................5

          4.     Pursuant to the terms of the Parties' agreements, Honeywell
                timely paid the Final EIM Invoice and Invoice No. 983108. .....................6

    C.     Locus' Claim for Breach of the RIMS Agreement should be
          Dismissed as a Matter of Law...................................................................................7

    D.     Locus Failed to Allege a Viable Account Stated Claim .........................................8

    E.     Locus has no Viable Trade Secrets Claim ..............................................................9

**II.    CONCLUSION** ..................................................................................................................10

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Air Atlanta Aero Eng'g Ltd. v. SP Aircraft Owner I, LLC*,
    637 F. Supp. 2d 185 (S.D.N.Y. 2009) ............................................................................8

*Anchor Motor Freight v. Ciabattoni*,
    716 A.2d 154 (Del. 1998) .................................................................................................1

*Ashcroft v. Iqbal*,
    556 U.S. 662, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009) ..................................5, 7, 8, 9

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007) ............................................8, 9

*Continental Ins. Co. v. Rutledge & Co.*,
    750 A.2d 1219 (Del. Ch. 2000) .........................................................................................2

*DynCorp v. GTE Corp.*,
    215 F. Supp. 2d 308 (S.D.N.Y. 2002) ..............................................................................9

*Geier v. Mozido, LLC*,
    No. 10931-VCS, 2016 Del. Ch. LEXIS 149, 2016 WL 5462437 (Del. Ch.
    Sept. 29, 2016) ..................................................................................................................7

*Global Network Communs., Inc. v. City of New York*,
    458 F.3d 150 (2d Cir. 2006) .............................................................................................4

*IBM v. Dale*,
    No. 7:11-cv-951 (VB), 2011 U.S. Dist. LEXIS 102187, 2011 WL 4012399
    (S.D.N.Y. Sept. 9, 2011) ...................................................................................................9

*Lazaro v. Good Samaritan Hosp.*,
    54 F. Supp. 2d 180 (S.D.N.Y. 1999) ................................................................................5

*Leveraged Innovations, LLC v. Nasdaq OMX Group, Inc.*,
    No. 11 Civ. 3203(KBF), 2012 U.S. Dist. LEXIS 60459, 2012 WL 1506524
    (S.D.N.Y. Apr. 20, 2012) ................................................................................................10

*Littlejohn v. BIC Corp.*,
    851 F.2d 673 (3d Cir. 1988) ...........................................................................................10

*NetJets Aviation, Inc. v. LHC Communs., LLC*,
    537 F.3d 168 (2d Cir. 2008) .............................................................................................8

*Reeder v. Sanford School, Inc.*,
   397 A.2d 139 (Del. 1979) ..........................................................................................2

*United States v. International Business Machines Corp.*,
   66 F.R.D. 219 (S.D.N.Y. 1974) ................................................................................10

**Statutes/Other Authorities**

Fed. R. Civ. P. 12(b)(6)..........................................................................................5, 8, 9

I.   **LAW AND ARGUMENT**

A brief's supposition and conjecture cannot create a viable claim where none exists. Such is the case here, where Honeywell's Motion to Dismiss ("Motion") demonstrates that the Complaint fails to set forth a viable claim as a matter of law, and Plaintiff's Memorandum in Opposition ("Opposition" or "Opp.") concentrates not on the Complaint's *allegations*, but on Plaintiff's *arguments*. Because liability cannot be established under the Parties' contracts, and because no actual damages have been pled as to any alleged disclosure of information, Honeywell's Motion should be granted.[1]

   A.   **THE 2012 EIM ORDER FORM EXPIRED AND THE PARTIES DID NOT AGREE TO ANY EXTENSION OF ITS TERMS**

It is blackletter Delaware law that there is no enforceable contract where parties did not intend to be bound absent a formal written, signed agreement. *See Anchor Motor Freight v. Ciabattoni*, 716 A.2d 154, 156 (Del. 1998). Locus attempts to evade this requirement—*and* the signed-writing requirement of the EIM Agreement—by suggesting that the doctrine of automatic renewal applies.[2] But Plaintiff's argument ignores that (1) the 2012 EIM Order Form expressly expired by its terms on December 31, 2015, and (2) there was no written and signed agreement between the Parties extending the term. Opp., p. 11-12. Following the Expiration Date, and in the absence of any signed, written agreement by the Parties extending the term, the 2012 EIM Order Form terms no longer applied. Doc. 1-1, p. 10, ¶ 12.5; *Ciabattoni,* at 156.

Plaintiff's automatic renewal argument also offers a tortured understanding of the word "automatic." The Parties engaged in a series of overt, subsequent agreements regarding the price, terms and scope of services Locus provided to Honeywell pursuant to the EIM Agreement. There

---

[1] Locus attempts to distract the Court with assertions of "retaliat[ion]," which are both false and irrelevant. Honeywell had every contractual right to terminate the contracts; only after Locus realized it was losing the business did it to begin to manufacture allegations and new invoices.
[2] Capitalized terms have the same meaning as in the Motion unless expressly stated otherwise.

1

was nothing "automatic" when the Parties agreed to terminate ePortal effective August 1, 2018, Locus issued Honeywell Invoice No. 98243, representing the final ePortal service charges, which Honeywell paid, and Locus discontinued access to the ePortal database. Hague Dec., ¶¶ 2-5, Exs. A and B. Similarly, nothing was automatic when Locus solicited Honeywell to renew EIM for the entirety of 2019 and the Parties instead agreed in writing that Honeywell would only renew EIM for six months. *Id.* at ¶¶ 6-7, Ex. C. On the contrary, Locus sent Honeywell an invoice for six months of EIM, and Honeywell issued Locus a purchase order for the Final EIM Invoice, confirming the agreement of the Parties. *Id.* at ¶ 10, Ex. E. The expired 2012 EIM Order Form did not govern the Parties' relationship on autopilot, the subsequent contractual agreements did.

Locus also suggests that the doctrine of automatic renewal applies because the Parties continued to deal with one another after the 2012 EIM Order Form expired. Opp., p. 11-12. However, Delaware courts have held that no oral modification clauses may only be waived by the Parties' course of conduct if the party alleging a change proves the intended change to the written agreement with "such specificity and directness as to leave no doubt of the intention of the parties to change what they previously solemnized by a formal document." *Reeder v. Sanford School, Inc.,* 397 A.2d 139, 141 (Del. 1979). Simply put, Delaware courts have an innate aversion to oral modifications of written agreements under such circumstances. *See, e.g., Continental Ins. Co. v. Rutledge & Co.*, 750 A.2d 1219, 1230 (Del. Ch. 2000) (rejecting an oral modification to a written contract because defendants failed to meet the "high evidentiary" burden of proving the alteration with "specificity and directness"). Even if Locus could sidestep the signed writing requirement of the EIM Agreement and/or avoid the import of the Parties' overt, subsequent agreements, the actual contract documents debunk Locus' renewal argument.

Locus next argues, "Honeywell continued to enjoy the Order Form's reduced prices and

complied with the Order Form's terms and conditions, without ever reverting back to the license agreement." Opp., p. 12. Locus, however, ignores that the EIM Agreement remained a valid and enforceable contract during the term of the 2012 EIM Order Form, which Locus concedes and the 2012 EIM Order Form expressly contemplated. *Id.* at 15; Doc. 1-2, p. 2.

Moreover, though Locus' assertion should have no impact on the Court's contractual analysis, Locus' argument does not hold water in any event based on the contract documents and invoices before the Court. Honeywell did not continue to enjoy the "reduced prices" of the 2012 EIM Order Form after the Expiration Date. For example, the 2012 EIM Order Form lists an annual price of $295,000.00 for ePortal. Doc. 1-2, p. 1. However, the ePortal Invoice charged Honeywell $34,330.86 for "one month" of ePortal. Hague Dec., Ex. B. Annualized, this results in a price of $411,970.32, an increase of nearly forty percent. Doc. 1-2, p. 1.

Similarly, the 2012 EIM Order Form lists an annual price of $525,000.00 for EIM. Doc. 1-2, p. 1. But the Final EIM Invoice charged $292,438.00 for EIM for the first half of 2019, and the disputed EIM Second Half Invoice asked for $301,211.00 for EIM for the second half of 2019. Hague Dec., ¶¶ 8-9, Ex. D; Morris Dec., ¶ 3, Ex. B. Thus, Locus purported to charge Honeywell $593,649.00 for EIM in 2019, an increase of over thirteen percent. Doc. 1-2, p. 1. The argument that the Parties continued to operate pursuant to the 2012 EIM Order Form belies the definition of automatic and is disproven by the obvious pricing changes for ePortal and EIM post-Expiration Date. To the extent Locus relies on the 2012 EIM Order Form in support of its breach of contract claims, those claims should be dismissed as a matter of law.

### B.   THE EIM AGREEMENT TERMINATED AND HONEYWELL DOES NOT OWE LOCUS ANYTHING FURTHER

#### 1.   **The written contract documents clearly demonstrate that Honeywell does not owe Locus for the EIM Second Half Invoice.**

3

Locus argues that it never agreed to a six-month EIM renewal, only to accept semi-annual payments from Honeywell—for which it can point to no contractual document. Opp., p. 13-15. The contract documents clearly demonstrate, instead, that while Locus proposed that Honeywell renew EIM for all of 2019, Honeywell only agreed to a six-month renewal, which Locus accepted. Hague Dec., ¶ 8, Ex. D. Honeywell confirmed the Parties' agreement of a six-month renewal by issuing a purchase order for the Final EIM Invoice. *Id.* at ¶ 10, Ex. E. Moreover, and in an abundance of caution, Honeywell also provided Locus with 60 days written notice of its intent to terminate on May 1, 2019. Morris Dec., ¶ 5, Ex. D. Therefore, there is no question that the documents before the Court, the authenticity of which Locus does not challenge, establish the agreed termination of the EIM Agreement after six months in 2019.

Locus' arguments to the contrary amount to a thinly veiled attempt to dodge the Parties' written agreement via clever pleading, which is insufficient to save the claim from dismissal. *See, e.g., Global Network Communs., Inc. v. City of New York*, 458 F.3d 150, 157 (2d Cir. 2006). Accordingly, to the extent Locus' breach of contract claim is based on nonpayment of the improper EIM Second Half Invoice, it should be dismissed as a matter of law.

**2. The written contract documents clearly demonstrate that Honeywell does not owe Locus for the EIM Termination Invoice.**

Locus attempts to salvage its claim for payment of the EIM Termination Invoice by claiming that Honeywell's retrieval of its data from EIM violated Locus' Terms of Use Agreement ("Terms of Use Policy"). Opp., p. 14-15. Yet by Locus' own admission, the formula it used to calculate the amount Honeywell allegedly owed in the EIM Termination Invoice is based in Section 7 of the expired 2012 EIM Order Form; the EIM Termination Invoice has nothing to do with the Terms of Use Policy. *See* Morris Dec., ¶ 4, Ex. C.

4

Further, Locus cannot use its Opposition to attempt to develop its claims or assert facts and conclusory statements not in the Complaint. *See Lazaro v. Good Samaritan Hosp.*, 54 F. Supp. 2d 180, 184 (S.D.N.Y. 1999). The Complaint alleges nothing more than that Honeywell violated the Terms of Use Policy (Doc. 1, p. 19, ¶ 133), which is exactly the type of threadbare legal accusation that is insufficient to avoid Rule 12(b)(6) dismissal. *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009).

Even if Honeywell had agreed to abide by the Terms of Use Policy (which has not even been alleged), and even if Honeywell's action in retrieving its data without Locus' approval was not consistent with the Terms of Use Policy (which also has not been alleged), it matters not because the express terms of the EIM Agreement, a fully integrated contract, instead provide that Honeywell owns its data, which Locus was obligated to return to Honeywell without cost on demand or on termination of the EIM Agreement. Doc. 1-1, p. 7, ¶ 7.7. Accordingly, any breach of contract claim based on Honeywell's refusal to pay the improper EIM Termination Invoice— which is inconsistent with the Parties' EIM Agreement—should be dismissed as a matter of law.

### 3.     Honeywell does not owe Locus for the ePortal Invoice.

Locus contends that it never agreed to terminate ePortal, only that it acknowledged Honeywell would discontinue usage on a certain date. Opp., p. 15. This argument ignores the import of the Parties' agreement. Indeed, if Honeywell was obligated to pay for ePortal for the remainder of 2018, then there is no reason why Locus would initiate "closeout procedures" of the software. Hague Dec., Ex. A. Moreover, the Parties' agreement specifically states that Honeywell was terminating ePortal, not merely discontinuing usage. *Id.* Finally, Locus had actual notice of Honeywell's intent to terminate ePortal ninety-nine (99) days before August 1, 2018, the termination date, a fact which Locus does not challenge, and a right which Honeywell

properly exercised. *See* Opp., p. 15. Even more telling, Locus waited until almost a year later, after it knew it was losing the Honeywell business, to manufacture and send the improper ePortal Invoice. Thus, to the extent Locus' breach of contract claim is based on nonpayment of the improper ePortal Invoice, it should be dismissed as a matter of law.

### 4. Pursuant to the terms of the Parties' agreements, Honeywell timely paid the Final EIM Invoice and Invoice No. 983108.

Locus argues that "basic math" shows that Honeywell failed to timely pay Locus Invoice No. 983108 and the Final EIM Invoice. Opp., p. 15-16. But basic contract law prevails.

Locus flat-out concedes that Invoice No. 983108 (for RIMS) was subject to 105-day payment terms (Opp., p. 16) and subject to Honeywell's normally scheduled payment runs, with payment to "be scheduled for the first payment cycle following expiration of the net terms period." Doc. 1-3, p. 5, ¶ 5.4. Locus issued Invoice No. 983108 on October 25, 2018 (Doc. 1, p. 14, ¶ 95), the net terms period expired on February 7, 2019, and payment cleared on February 26, 2019, only nineteen days later; there was no late payment.

Honeywell then paid the Final EIM Invoice on February 19, 2019 (Doc. 1, p. 14, ¶ 95), within twelve days of the expiration of the net terms period (February 7, 2019); there was no late payment. Document 1, p. 14, ¶ 95. Locus argues that the 90-day payment terms of the 2012 EIM Order Form applied, but, as demonstrated *supra*, the 2012 EIM Order Form expired by its terms on December 31, 2015. *See supra* § I(A). The stark reality is that Honeywell issued a purchase order in response to the Final EIM Invoice, subject to payment terms of 105 days and subject to Honeywell's normally scheduled payment runs. Hague Dec., Ex. D. The purchase order was accepted by Locus without objection; and Honeywell timely paid. To the extent Locus' breach of contract claim is based on an allegation of late payment of Invoice No. 983108 and/or the Final EIM Invoice, it should be dismissed as a matter of law.

### C. LOCUS' CLAIM FOR BREACH OF THE RIMS AGREEMENT SHOULD BE DISMISSED AS A MATTER OF LAW

Locus argues that its claim for breach of the RIMS Agreement survives because the settlement with Honeywell was for "Part I of RIMS SOW" (Opp., p. 18) and, as a result, Honeywell has not paid a number of <u>unidentified</u> invoices. To reach this conclusion, Locus ignores the plain language of the settlement and New York law. The interpretation of a settlement and release is a question of law for the court and "is appropriate for disposition on a motion to dismiss." *Geier v. Mozido, LLC*, No. 10931-VCS, 2016 Del. Ch. LEXIS 149, at *7, 2016 WL 5462437 (Del. Ch. Sept. 29, 2016) (applying New York law). Honeywell's reliance on the settlement, therefore, is correct and Locus' contention that in doing so Honeywell is improperly attempting to "substitute its own facts" in fact defies blackletter law.

Locus alleges that "Honeywell also breached the Contracts by refusing to pay any RIMS invoices for professional services, which eventually totaled $696,624." Doc. 1, p. 2, ¶ 9. The Opposition specifies that these purported invoices were for "professional services on a time and materials basis[.]" Opp., p. 16. Though the updated invoice mentions "Software Subscription Fees," the description expressly states that it is for the "[a]greed settlement in attached memo." Hague Dec., Exs. F and G. The settlement agreement states that "Honeywell and Locus agree to settle ***the past labor hours completed that were in dispute*** at an agreed $275,000." *Id.* at Ex. F (emphasis added). Locus' contention that this settlement is limited to "payment of RIMS software subscription fees" has no basis in the written agreement.

In addition, because Honeywell has shown that it settled the purported RIMS invoices, Locus' claim that payment on the settled amounts in the invoices is overdue is also defective. For Locus to argue otherwise, it must properly allege sufficient facts. *Iqbal*, 556 U.S. at 678. Attempting to evade dismissal, Locus has not provided the purported invoices, not explained

7

when they were issued and not explained when they were due. Locus has not even specifically identified them, despite the ease of identifying an invoice. Courts "are not bound to accept as true a legal conclusion couched as a factual allegation." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007).

### D.     LOCUS FAILED TO ALLEGE A VIABLE ACCOUNT STATED CLAIM

Locus' efforts to rehabilitate its account stated claim also fall flat. Opp., p. 18-21. First, even assuming that Locus demonstrated an entitlement to payment on any of the disputed invoices (and – as demonstrated *supra* in Sections I(A), (B), and (C) – it has not), Locus cannot avoid that the Complaint "fails to provide facts sufficient under *Iqbal* to support the allegation that [Honeywell] promised to pay the amount stated." *Air Atlanta Aero Eng'g Ltd. v. SP Aircraft Owner I, LLC*, 637 F. Supp. 2d 185, 199 (S.D.N.Y. 2009). Instead, the Complaint is comprised mainly of bare legal conclusions regarding the alleged untimeliness of the various invoices, which are insufficient to sidestep Rule 12(b)(6) dismissal. *See, e.g.,* Complaint, ¶¶ 36, 143.

Second, Locus' reliance on *NetJets Aviation, Inc. v. LHC Communs., LLC*, 537 F.3d 168, 172 (2d Cir. 2008), is misplaced. In *NetJets*, the Second Circuit reversed a District Court's dismissal of NetJets' breach of contract claims on the basis that it was not duplicative of NetJets' account stated claim. *Id*. The Second Circuit noted that "[t]wo claims are duplicative of one another if they arise from the same facts… and do not allege distinct damages" but concluded that the breach of contract claim was not duplicative of and subsumed by the account stated claim because it provided for the recovery of attorneys' fees in addition to the balances due on the accounts while the account stated claim provided no avenue for the recovery of attorneys' fees. *Id*. at 175-76 (citations and quotations omitted). Here, Locus presents the Court with the exact opposite scenario: the damages Locus seeks on its account stated claim are entirely subsumed by the breach of contract claim, which Honeywell has already established fails as a

8

matter of law. Indeed, Locus concedes this fact: "Locus['] claim for account stated may be limited to actual unpaid invoices, whereas Locus' claim for breach of contract allows for a much broader scope of compensatory and punitive damages, as well as attorneys' fees." Opp., p. 21. Hence, Locus proves Honeywell's point and the account stated claim cannot stand.

### E.     LOCUS HAS NO VIABLE TRADE SECRETS CLAIM

The misappropriation of trade secrets claim fails because: (1) Locus still has not alleged any direct harm resulting from any alleged misappropriation; (2) Locus publicly filed the 2012 EIM Order Form, thus waiving its right to recover for any alleged disclosure; and (3) Locus has not pled that any purported disclosure of confidential information violates the terms of the NDA.

Locus attempts to revive this claim by asserting that Section 11 of the EIM Agreement does not bar the claim because it may recover direct damages. However, Locus merely alleges that "Honeywell's actions constitute direct harm." Opp., p. 23. Under *Iqbal* and *Twombly*, generic allegations of direct harm are insufficient to avoid Rule 12(b)(6) dismissal. *See IBM v. Dale*, No. 7:11-cv-951 (VB), 2011 U.S. Dist. LEXIS 102187, at *5, 2011 WL 4012399 (S.D.N.Y. Sept. 9, 2011) ("an allegation that defendant 'suffered damages' without particular facts as to how she was damaged does not satisfy *Twombly* and *Iqbal*."). Therefore, "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim that would entitle him to relief." *DynCorp v. GTE Corp.,* 215 F. Supp. 2d 308, 315 (S.D.N.Y. 2002) (citations and quotations omitted) (dismissing complaint based on limitation of liability provision that only permitted recovery of direct damages, which plaintiff did not allege).

Next, Locus argues that its trade secrets claim is based on a violation of the 2012 EIM Order Form (Opp., p. 23), which states: "this Order Form pricing is strictly confidential and Honeywell International, Inc. will not share it..." (Doc. 1, Ex. 2). However, by filing the document publicly in this action and making no effort to protect the information, Locus waived

9

its right to recover for any alleged disclosure. *See, e.g., United States v. International Business Machines Corp.*, 66 F.R.D. 219, 220 (S.D.N.Y. 1974) (non-party's failure to seek the court's protection of documents prior to public deposition resulted in a waiver of confidentiality); *Leveraged Innovations, LLC v. Nasdaq OMX Group, Inc.*, No. 11 Civ. 3203(KBF), 2012 U.S. Dist. LEXIS 60459, at *3 n.1, 2012 WL 1506524 (S.D.N.Y. Apr. 20, 2012); *Littlejohn v. BIC Corp.*, 851 F.2d 673, 680-81 (3d Cir. 1988).

Finally, Locus asserts that its trade secrets claim is supported by the NDA. However, the Complaint does not actually allege that Honeywell's purported disclosure of Locus' confidential information breached the NDA. Doc. 1, p. 18, ¶ 120. Rather, Locus claims that Honeywell breached the "Contracts," which Locus limits to the EIM Agreement, the 2012 EIM Order Form and the RIMS Agreement. *Id.* at p. 1, ¶ 4. In any event, the NDA only applies to "Confidential" information Locus furnished to Honeywell <u>in connection with</u> Honeywell's possible acquisition of Locus, and expressly <u>excludes</u> any information that "becomes available to Honeywell from [Locus] pursuant to a commercial collaboration in the ordinary course of business unrelated to the consideration of the Transaction and subject to a separate obligation of confidentiality to [Locus]." Doc. 1-5, p. 2. The Complaint does not allege that any of Locus' purported confidential information contained in the RFP was communicated to Honeywell in connection with the possible acquisition of Locus. Doc. 1, p. 18, ¶¶ 118-120. Locus, to the contrary, in fact describes the purportedly disclosed information as the current amounts paid to Locus by Honeywell and charts and screenshots showing different facets of Locus' software. *Id.* at ¶ 119.

## II. CONCLUSION

Accordingly, for the reasons set forth in the Motion and herein, Honeywell's Motion should be granted, and Plaintiff's Complaint should be dismissed as a matter of law.

Dated: November 18, 2020　　　　　　　　Respectfully submitted,

　　　　　　　　　　　　　　　　　　　/s/ Christine M. Haaker
　　　　　　　　　　　　　　　　　　　Christine M. Haaker (OH #0063225)
　　　　　　　　　　　　　　　　　　　Admitted *Pro Hac Vice*
　　　　　　　　　　　　　　　　　　　Sean P. McCormick (OH #0088281)
　　　　　　　　　　　　　　　　　　　Admitted *Pro Hac Vice*
　　　　　　　　　　　　　　　　　　　THOMPSON HINE LLP
　　　　　　　　　　　　　　　　　　　10050 Innovation Drive, Suite 400
　　　　　　　　　　　　　　　　　　　Miamisburg, Ohio 45342
　　　　　　　　　　　　　　　　　　　Telephone:  937.443.6822
　　　　　　　　　　　　　　　　　　　Facsimile:  937.443.6635
　　　　　　　　　　　　　　　　　　　Christine.Haaker@ThompsonHine.com
　　　　　　　　　　　　　　　　　　　Sean.McCormick@ThompsonHine.com

　　　　　　　　　　　　　　　　　　　Emily J. Mathieu
　　　　　　　　　　　　　　　　　　　THOMPSON HINE LLP
　　　　　　　　　　　　　　　　　　　335 Madison Avenue, 12th Floor
　　　　　　　　　　　　　　　　　　　New York, NY 10017
　　　　　　　　　　　　　　　　　　　Telephone:  212.344.3963
　　　　　　　　　　　　　　　　　　　Facsimile:  212.344.6101
　　　　　　　　　　　　　　　　　　　Emily.Mathieu@ThompsonHine.com

　　　　　　　　　　　　　　　　　　　*Attorneys for Defendant Honeywell International Inc.*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------ x

LOCUS TECHNOLOGIES,

                      Plaintiff,        Case No. 1:19-cv-11532-PGG-KHP

v.                                                   Judge Paul G. Gardephe

HONEYWELL INTERNATIONAL INC.,

                      Defendant.

------------------------------------------------------------ x

## CERTIFICATE OF SERVICE

I hereby certify that on November 18, 2020, I served Defendant Honeywell International Inc.'s Reply in Support of Motion to Dismiss, by email and first class mail enclosed in a securely sealed postage-paid envelope addressed to the following at the last known address as follows:

John Giardino, Esq.
Alex Barnett-Howell, Esq.
MICHELMAN & ROBINSON, LLP
800 Third Avenue, 24th Floor
New York, New York 10022
jgiardino@mrllp.com
abarnett-howell@mrllp.com
*Attorneys for Plaintiff Locus Technologies*

                                                              _/s/ Dwayne Lunde_
                                                              Dwayne Lunde