UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

LOCUS TECHNOLOGIES,

                    Plaintiff,

          - against -

HONEYWELL INTERNATIONAL INC.,

                    Defendant.

**ORDER**

19 Civ. 11532 (PGG) (KHP)

PAUL G. GARDEPHE, U.S.D.J.:

          In this diversity action, Plaintiff Locus Technologies ("Locus") asserts claims for

breach of contract, account stated, and misappropriation of trade secrets against Defendant

Honeywell International Inc. (Cmplt. (Dkt. No. 1) ¶¶ 124-53) These claims arise out of a

sixteen-year contractual relationship between the parties, during which Defendant Honeywell

utilized Plaintiff Locus's proprietary software products. Locus contends that Honeywell

breached the underlying contracts; did not make payments required by those agreements; and

disclosed Plaintiff's proprietary information in a 2018 Request for Proposal (the "Honeywell

RFP"), in violation of Honeywell's contractual obligations and the Delaware Uniform Trade

Secrets Act ("DUTSA"), 6 Del. C. § 2001, et seq. (Id. ¶¶ 25-153)[1]

          In September 2024, Defendant moved for summary judgment. (Mot. for Sum J.

(Dkt. No. 168)) In connection with that motion, both sides have moved to seal certain portions

of the summary judgment record. (See Jt. Sealing Ltr. (Dkt. No. 167))

---

[1] The Court assumes familiarity with the facts of this case, which are set forth in more detail in
this Court's September 30, 2022 Order adopting Judge Parker's Report and Recommendation
and denying Honeywell's motion to dismiss. (See Sept. 30, 2022 Order (Dkt. No. 95))

Plaintiff seeks sealing as to 143 documents that it has organized into the following five categories:  (1) Locus's alleged trade secrets; (2) Locus's confidential business and financial information and strategies; (3) Locus's investments in research and development, product development, and marketing strategies; (4) materials relating to mediation and settlement discussions; and (5) medical information.  (Id. at 2-3; id. at Ex. A)[2]  Defendant does not oppose Plaintiff's sealing request.  (Id. at 1 n.1)

Defendant seeks sealing as to (1) eleven documents that allegedly contain "sensitive and confidential business information, including cost savings data, vendor selection strategy and discussions, and internal investigative materials concerning a former employee's performance"; and (2) three documents that allegedly contain "cost and pricing information" obtained from a non-party.  (Id. at 4-5)  Plaintiff does not oppose Defendant's sealing request. (Id. at 1 n.1)

## I.    **LEGAL STANDARDS**

As a general matter, documents filed in support of a motion "are judicial documents to which a presumption of immediate public access attaches under both the common law and the First Amendment."  Lugosch v. Pyramid Co. of Onondaga, 435 F.3d 110, 126 (2d Cir. 2006).  This "presumption of access . . . can be overcome only by specific, on-the-record findings that higher values necessitate a narrowly tailored sealing."  Id.

The Second Circuit has articulated a three-step process for determining whether documents should be placed under seal.  A court must first determine whether the presumption of

---

[2]  The page numbers of documents referenced in this Order — other than deposition transcripts — correspond to the page numbers designated by this District's Electronic Case Files ("ECF") system.  Citations to deposition transcripts correspond to the page numbers assigned by the court reporter.

public access attaches to the documents at issue.  A presumption of public access attaches to any item that constitutes a "judicial document" — i.e., an "'item . . . relevant to the performance of the judicial function and useful in the judicial process.'"  Id. at 115 (quoting United States v. Amodeo, 44 F.3d 141, 145 (2d Cir. 1995) ("Amodeo I")).  If the court determines that a document for which sealing is sought is a "judicial document," the court must then determine the weight of the presumption of access.  "'[T]he weight to be given the presumption of access must be governed by the role of the material at issue in the exercise of Article III judicial power and the resultant value of such information to those monitoring the federal courts.'"  Id. at 119 (quoting United States v. Amodeo, 71 F.3d 1044, 1049 (2d Cir. 1995) ("Amodeo II")).  "'Generally, the information will fall somewhere on a continuum from matters that directly affect an adjudication to matters that come within a court's purview solely to insure their irrelevance.'"  Id.  (quoting Amodeo II at 1049).  Finally, after determining the weight of the presumption of access, the court must "'balance competing considerations against it.'"  Id. at 120 (quoting Amodeo II at 1050).  "Such countervailing factors include but are not limited to 'the danger of impairing law enforcement or judicial efficiency' and 'the privacy interests of those resisting disclosure.'"  Id. (quoting Amodeo II at 1050).

## II.    **ANALYSIS**

Here, the documents at issue were submitted in connection with Defendant's motion for summary judgment, and thus are clearly "judicial documents."  There is a strong presumption of public access to these materials because they will "directly affect" this Court's adjudication of this case.  See, e.g., Standard Inv. Chartered, Inc. v. Nat'l Assn. of Sec. Dealers, Inc., No. 07 Civ. 2014, 2008 WL 199537, at *16 (S.D.N.Y. Jan. 22, 2008) ("Motion papers are judicial documents and are thus subject to a strong presumption of access under the First

Amendment."). To rebut the strong presumption of public access that applies here, the party seeking sealing must offer specific facts "demonstrating that closure is essential to preserve higher values and is narrowly tailored to serve that interest." Lugosch, 435 F.3d at 120 (quoting In re New York Times Co., 828 F.2d 110, 116 (2d Cir. 1987).

The Court considers below whether the parties have made the showing necessary to justify sealing.

### A. Plaintiff's Sealing Requests

#### 1. August 17, 2023 Afzal Deposition and Accompanying Exhibits

Plaintiff seeks an order redacting portions of the deposition of Ben Afzal (see Dkt. No. 175-2) and sealing five exhibits used at his deposition. (See Jt. Sealing Ltr., Ex. A (Dkt. No. 167-1) at 2-4) In the deposition excerpts at issue, Afzal testifies about (1) Locus's pricing for its EIM software service[3] in 2019; (2) where in Honeywell's RFP Locus's pricing for its EIM software is disclosed; (3) detailed data regarding how Locus employees' work hours are allocated; and (4) Locus's investments in research and development. (See Afzal Dep. (Dkt. No. 175-2) at 30-31, 180, 185-98) Courts regularly seal pricing information and information concerning the allocation of resources to research and development. See, e.g., Hesse v. SunGard Sys. Int'l, No. 12 CIV. 1990 CM JLC, 2013 WL 174403, at *2 (S.D.N.Y. Jan. 14, 2013) (sealing documents disclosing "billing rates and project pricing"); Kewazinga Corp. v. Microsoft Corp., No. 1:18-CV-4500-GHW, 2021 WL 1222122, at *6 (S.D.N.Y. Mar. 31, 2021) (listing

---

[3] Locus's Environmental Information Management or EIM software service is a data management and compliance system that facilitates the collection, organization, analysis, and reporting of environmental data necessary to comply with environmental regulations. (See Cmplt. (Dkt. No. 1) ¶¶ 22-23)

"confidential research and development information" as an example of "commonly sealed documents"). Accordingly, the motion to seal is granted as to the Afzal deposition excerpts.

Locus also seeks sealing as to Afzal Deposition Exhibits 1, 20, 30, 41, and 42. Exhibit 1 (Dkt. No. 175-3) is Locus's budget authorization request for Honeywell's continued access to the EIM service, which contains detailed pricing information that is the proper subject of sealing.[4]  Hesse, 2013 WL 174403, at *2.

Exhibit 20 (Dkt. No. 175-22) is Locus's monthly progress status report to Honeywell concerning the RIMS project.[5]  Exhibit 20 contains detailed information regarding Locus's activities on the RIMS project, including tasks completed over two months in 2014 and planned next steps in furtherance of the project.  This exhibit also contains Locus's pricing information for the RIMS project, in the form of Locus's first invoice to Honeywell for the RIMS project.  Because disclosure of this information would give a competitor insight into Locus's processes for developing a new software application, along with pricing information for this type of project, such disclosure "'might harm [Locus's] competitive standing.'" Accordingly, this exhibit is properly sealed.  Oliver Wyman, Inc. v. Eielson, 282 F. Supp. 3d 684, 706 (S.D.N.Y. 2017) (quoting In re Parmalat Sec. Litig., 258 F.R.D. 236, 244 (S.D.N.Y. 2009)).

Exhibit 30 (Dkt. No. 175-32) is a spreadsheet summarizing change orders Honeywell submitted to Locus in connection with the RIMS project and corresponding prices

---

[4]  The same ruling applies to Exhibit 4 to the February 6, 2024 Duplan Deposition (Dkt. No. 175-63) and Exhibit 34 to Plaintiff's Rule 56.1 Counterstatement (Dkt. No. 179-37)  These documents are duplicates of Exhibit 1 to the August 17, 2023 Afzal Deposition.
[5]  Locus's Remediation Information Management System or RIMS is a software application that Locus designed to assist Honeywell in managing its environmental and remediation financial data.  (See Cmplt. (Dkt. No. 1) ¶ 56)

quoted by Locus.  This exhibit details the internal processes and efforts Locus undertook in order to comply with Honeywell's requested changes.  Because this exhibit contains detailed information about how Locus develops software, responds to client requests, and prices various tasks, disclosure of this exhibit could harm Locus's competitive standing.  Accordingly, Exhibit 30 is properly sealed.  See Eielson, 282 F. Supp. 3d at 706.

Exhibit 41 (Dkt. No. 175-43) is a spreadsheet containing a summary of Locus's research and development expenditures between 1998 and 2022.  The spreadsheet contains nearly 400,000 rows of data.  The Court concludes that disclosure of Locus's research and development expenditures in this level of detail would subject the company to a risk of competitive harm.[6]  Accordingly, the motion to seal is granted as to Afzal Deposition Exhibit 41.

Exhibit 42 (Dkt. No. 175-44) is Locus's estimate of the revenue it lost as a result of Honeywell's disclosure of Locus's confidential information.  This document was prepared for use in a confidential mediation.  Documents prepared for such purposes are subject to sealing. See United States v. Glens Falls Newspapers, Inc., 160 F.3d 853, 858 (2d Cir. 1998) ("[T]he presumption of access to settlement negotiations, draft agreements, and conference statements is negligible to nonexistent[.]"); Liu v. Nielsen Co. (US) LLC, No. 22 CIV. 9084 (JHR), 2023 WL 3750116, at *2 (S.D.N.Y. June 1, 2023) ("'There is no established presumption of public access with respect to confidential settlement discussions and documents.'") (quoting Travelers Indem. Co. v. Excalibur Reinsurance Corp., No. 3:11-CV-1209 CSH, 2013 WL 4012772, at *5 (D.

---

[6]  The same ruling applies to Exhibit 41 to the September 1, 2023 Duplan Deposition (Dkt. No. 176-5), Exhibit 41 to the Todd Pierce Deposition (Dkt. No. 177-4), and Exhibit 4 to the February 26, 2024 Afzal Deposition (Dkt. No. 177-79), all of which are duplicates of Exhibit 41 to the August 17, 2023 Afzal Deposition.

Conn. Aug. 5, 2013)).  Accordingly, the motion to seal is granted as to Afzal Deposition Exhibit 42.[7]

### 2.   Exhibits to the French Deposition

Plaintiff seeks to seal two exhibits used at the deposition of Christopher French. (Jt. Sealing Ltr., Ex. A (Dkt. No. 167-1) at 4)  French Deposition Exhibit 11 (Dkt. No. 175-56) is a statement of work that Locus and Honeywell entered into regarding the RIMS project.  French Deposition Exhibit 12 (Dkt. No. 175-57) is an April 7, 2017 email chain regarding the scope of work for that project, which contains pricing information.  The statement of work is attached as an exhibit to the publicly filed Complaint, however (see Cmplt., Ex. 4 (Dkt. No. 1-4)), and the pricing information contained in Exhibit 12 is excerpted from the statement of work.  (See id. at 23).  Given these circumstances, the motion to seal is denied as to these exhibits.  See Louis Vuitton Malletier S.A. v. Sunny Merch. Corp., 97 F. Supp. 3d 485, 511 (S.D.N.Y. 2015) ("[T]here is no justification for keeping the information that has already been public under seal.").

### 3.   February 26, 2024 Duplan Deposition and Accompanying Exhibits

Plaintiff seeks to seal portions of the February 26, 2024 Neno Duplan deposition (Dkt. No. 175-59) and thirteen exhibits used at that deposition.  (See Jt. Sealing Ltr., Ex. A (Dkt. No. 167-1) at 5-9)  As to the deposition, Plaintiff seeks to seal testimony concerning

1. Locus's proprietary pricing formula (Feb. 26, 2024 Duplan Dep. (Dkt. No. 175-59) at 13-15);

2. where in the Honeywell RFP Locus's confidential pricing information was disclosed (id. at 17-21);

---

[7]  The same ruling applies to Exhibit 42 to the September 1, 2023 Duplan Deposition (Dkt. No. 176-6) and Exhibit 42 to the Todd Pierce Deposition (Dkt. No. 177-5) — both of which are duplicates of Exhibit 42 to the August 17, 2023 Afzal Deposition.

3.  total research and development costs for EIM (id. at 24, 34, 40, 44, 48, 53, 58, 62, 69, 71, 85, 91, 94, 100, 103, and 109);

4.  trade secrets disclosed in the Honeywell RFP and where in the Honeywell RFP Locus's trade secrets are disclosed (id. at 15-112); and

5.  Locus's internal practices with respect to the handling of confidential and trade secret information (id. at 116-17).

(Jt. Sealing Ltr., Ex. A (Dkt. No. 167-1) at 5)[8]

The motion to seal is granted as to those portions of Duplan's February 26, 2024 testimony discussing (1) Locus's proprietary pricing formula and how the formula is implemented; and (2) the specific pricing information contained in the Honeywell RFP that Plaintiff contends constitutes a trade secret.  (Feb. 26, 2024 Duplan Dep. (Dkt. No. 175-59) at 13-15, 17-21); see Hesse, 2013 WL 174403, at *2; Kewazinga, 2021 WL 1222122, at *6.

Sealing is also granted as to those portions of the Duplan transcript disclosing the total amount of Locus's research and development expenses associated with its EIM software product.  (Feb. 26, 2024 Duplan Dep. (Dkt. No. 175-59) at 24, 34, 40, 44, 48, 53, 58, 62, 69, 71, 85, 91, 94, 100, 103, and 109); see Kewazinga, 2021 WL 1222122, at *6.

Sealing is also granted as to Duplan's testimony concerning Honeywell's alleged disclosure of Locus's trade secrets in the Honeywell RFP.  Although the general nature of the alleged trade secrets at issue is disclosed in the Complaint (see Cmplt. (Dkt. No. 1) ¶ 119), Duplan's testimony concerning Locus's alleged trade secrets is far more detailed.  The

---

[8]  The Complaint alleges that the Honeywell RFP contains "specific descriptions of Locus's proprietary methods, Locus's award-winning SaaS architecture and workflows, screenshots of Locus's software, and details concerning Locus's costs and billing."  (Cmplt. (Dkt. No. 1) ¶ 119)  In denying Honeywell's motion to dismiss, this Court concluded that "the Complaint's allegations sufficiently plead a claim [for trade secret misappropriation] under [the Delaware Uniform Trade Secrets Act]."  (Sept. 30, 2022 Order (Dkt. No. 95) at 31)

designated deposition excerpts contain testimony as to whether dozens of documents contain Locus's trade secrets and, if so, why these matters constitute trade secrets. For example, Duplan offers testimony as to why screenshots of the EIM software are trade secrets. (See Feb. 26, 2024 Duplan Dep. (Dkt. No. 175-59) at 42-45) Duplan also testifies about how a competitor could utilize the information in the Honeywell RFP to cause Locus competitive harm. (See, e.g., id. at 51) Therefore, the motion to seal is granted as to these excerpts. (See id. at 15-112)

The motion to seal is denied as to Duplan's testimony about Locus's internal practices regarding the handling of confidential and trade secret information, because Plaintiff has not explained how disclosure of its internal practices would cause it harm. Moreover, Locus's internal practices regarding confidential and trade secret information are detailed in other documents that have been posted on the public docket. (See, e.g., Duplan Decl. (Dkt. No. 179-2) ¶ 18)

Locus also seeks sealing as to the following exhibits used at the February 26, 2024 Duplan deposition: Exhibit 2 (Dkt. No. 175-61), which contains a detailed chart identifying and describing the alleged Locus trade secrets that Honeywell allegedly disclosed; Exhibit 3 (Dkt. No. 175-62), which is a spreadsheet containing detailed information regarding Locus's pricing for its EIM product; and Exhibits 5-14 (Dkt. Nos. 175-64 to 175-77), which contain alleged trade secrets detailing Plaintiff's proprietary EIM software. The Court concludes that all of these exhibits are properly sealed.[9] See Kewazinga, 2021 WL 1222122, at *6.

---

[9] The same ruling applies to (1) Exhibit 7 to the deposition of Dan Alexander (Dkt. No. 177-33); (2) Exhibits 9, 13, 15, 18 to the deposition of Hal Pomeranz (Dkt. Nos. 177-61, 177-65, 177-67, 177-70); (3) Exhibit 3 to the February 26, 2024 Afzal deposition (Dkt. No. 177-78); and (4) Exhibits 44, 45, and 47 to 53 to Plaintiff's Rule 56.1 Counterstatement (Dkt. Nos. 179-47, 179-48, and 170-50 to 170-56) — all of which are duplicates of Exhibits 2, 3, and 5-14 to the February 26, 2024 Duplan deposition.

### 4. September 1, 2023 Duplan Deposition and Accompanying Exhibits

Plaintiff seeks to seal portions of the September 1, 2023 Neno Duplan deposition

(see Sept. 1, 2023 Duplan Dep. (Dkt. No. 176-2)) and forty-five exhibits used at the deposition.

(Jt. Sealing Ltr., Ex. A (Dkt. No. 167-1) at 9-21)

As to the deposition, Plaintiff seeks to seal testimony concerning

1. Locus's complaint to the Honeywell Integrity Helpline (Sept. 1, 2023 Duplan Dep. (Dkt. No. 176-2) at 33, 36, 40-41, 43-47, 49-52, 55);

2. settlement discussions (id. at 38, 69-70);

3. Locus pricing, accounting, and business strategy (id. at 39-40, 280-84);

4. alleged trade secrets disclosed in the Honeywell RFP and excerpts from the Hal Pomeranz expert report (id. at 65-68, 70-76, 78-79, 102-111, 114-15, 122-25, 128-29, 139-141, 146-47, 151-55, 160-68, 171-74, 179-181, 183-190);

5. submissions made in connection with a mediation before Magistrate Judge Parker in the instant case (id. at 81-86, 215-16, 228-30, 248-251, 256, 263-64);

6. Locus's research and development expenses (id. at 87-93);

7. Locus's annual internal financial statements (id. at 94-100); and

8. Locus's competitive bidding practices and strategies (id. at 195-200, 202-239, 241-254, 256-275).

(Jt. Sealing Ltr., Ex. A (Dkt. No. 176-1) at 9-10)

The motion to seal is denied as to Duplan's testimony concerning Locus's

complaint to Honeywell's helpline, because that complaint has been publicly docketed. (See

Dkt. No. 175-41)

Sealing is granted as to the testimony concerning settlement discussions and

mediation submissions. See Glens Falls Newspapers, Inc., 160 F.3d at 858.

Sealing is granted as to Duplan's testimony concerning Locus's strategy for

pricing the software products it sold to Honeywell. Locus's competitors or prospective

customers could seek to exploit this information to Locus's detriment.  See Louis Vuitton Malletier, 97 F. Supp. 3d at 511.

Duplan's testimony concerning Locus's internal accounting practices reveals how Locus tracks outstanding invoices and payment dates.  Sealing as to this testimony is denied, because Locus has not explained how disclosure of these matters could cause it harm.

Sealing is granted as to those portions of Duplan's testimony in which he identifies the information in the Honeywell RFP that contains Locus's alleged trade secrets and explains why that information is proprietary and/or confidential.  For example, Duplan testifies about portions of the Pomeranz expert report, in which Pomeranz discusses — in great detail — Locus's alleged trade secrets, including high-level process maps and pricing information.  (See, e.g., Sept. 1, 2023 Duplan Dep. (Dkt. No. 176-2) at 102-11)

Sealing is also granted as to Duplan's testimony regarding Locus's research and development costs, and its internal financial statements.  Locus is not a public company, and its internal financial records are confidential.

Finally, sealing is granted as to the testimony concerning Locus's competitive bidding practices and strategies, because disclosure of this information might "'provide valuable insights into [the] company's current business practices that a competitor would seek to exploit.'"  Louis Vuitton Malletier, 97 F. Supp. 3d at 511 (quoting Encycl. Brown Prods., Ltd. v. Home Box Office, Inc., 26 F.Supp.2d 606, 614 (S.D.N.Y. 1998)).

As noted above, Plaintiff also seeks to seal forty-five exhibits that were introduced at the September 1, 2023 Duplan deposition.  (Jt. Sealing Ltr., Ex. A (Dkt. No. 167-1) at 10-21)

Exhibit 46 (Dkt. No. 176-8) and Exhibit 47 (Dkt. No. 176-9) are a memorandum and a letter that summarize, in detail, the alleged trade secrets contained in the Honeywell RFP. Sealing is granted as to these exhibits.[10]

Exhibits 48-51 (Dkt. Nos. 176-10 to 176-13) are Locus's detailed financial statements for the years from 2018 to 2021. As noted above, Locus is not a public company, and its internal financial statements are confidential. According, the motion to seal these exhibits is granted.[11] See Amodeo II, 71 F.3d at 1051.

Exhibit 52 (Dkt. No. 176-14) is the expert report of Hal Pomeranz. The motion to seal Exhibit 52 is granted because the Pomeranz report details and provides examples of the alleged Locus trade secrets disclosed in the Honeywell RFP.[12]

---

[10] The same ruling applies to Exhibits 46 and 47 to the Todd Pierce deposition (Dkt. Nos. 177-6 and 177-7), Exhibits 7 and 8 to the Hal Pomeranz deposition (Dkt. Nos. 177-59 and 177-60), and Exhibit 54 to Plaintiff's Rule 56.1 Counterstatement (Dkt. No. 179-57) — all of which are duplicates of Exhibits 46 and 47 to the September 1, 2023 Duplan deposition.

[11] The same ruling applies to Exhibits 5-8 to the February 26, 2024 Ben Afzal deposition (Dkt. Nos. 177-80 to 177-83) — all of which are duplicates of Exhibits 48-51 to the September 1, 2023 Duplan deposition.

[12] Honeywell filed on the public docket Exhibit 52 to the Todd Pierce deposition, which is a copy of the Pomeranz expert report. (See Dkt. No. 177-8) Plaintiff does not list Exhibit 52 in the joint sealing letter, but instead seeks sealing as to Exhibit 53 to the Pierce deposition. Plaintiff states that Exhibit 53 to the Pierce deposition is the "Pomeranz report outlining trade secrets in RFP." (Jt. Sealing Ltr., Ex. A (Dkt. No. 167-1) at 24) However, Exhibit 53 is not the Pomeranz expert report; it is instead a slide from a presentation entitled "Streamlining and Transparently Automating Complex Waste Determinations at Los Alamos National Laboratory." (See Dkt. No. 177-9) Given these circumstances, it is clear that Plaintiff inadvertently designated Exhibit 53 (Dkt. No. 177-9) for sealing, when it intended to request sealing as to Exhibit 52 (Dkt. No. 177-8). Accordingly, the Court will treat Plaintiff's motion as seeking sealing as to Exhibit 52. The Clerk of Court is directed to seal Dkt. No. 177-8 and unseal Dkt. No. 177-9.

The Court's ruling that Exhibit 52 be sealed applies as well to Exhibit 3 to the Dan Alexander deposition (Dkt. No. 177-29) and Exhibit 2 to the Pomeranz deposition (Dkt. No. 177-50) — these exhibits are duplicates of Exhibit 52 to the September 1, 2023 Duplan deposition.

Exhibits 67-102 to the September 1, 2023 Duplan deposition contain internal Locus email chains and accompanying attachments regarding the Company's responses to various requests for proposals and requests for information issued by third-parties. Locus argues that these materials should be sealed because — considered as a whole — they disclose Locus's competitive bidding practices and strategies. (See Dkt. Nos. 176-42 to 176-77; Jt. Sealing Ltr., Ex. A (Dkt. No. 167-1) at 13-21) As discussed earlier, the Court concludes that disclosure of Locus's bidding practices and strategies would "'provide valuable insights into [the] company's current business practices that a competitor would seek to exploit.'" Louis Vuitton Malletier, 97 F. Supp. 3d at 511 (quoting Encycl. Brown Prods., 26 F. Supp. 2d at 614). In addition, many of the exhibits contain alleged trade secrets, including pricing information and screenshots from Locus's software. (See Dkt. Nos. 176-49, 176-52, 176-57, 176-61, 176-62, 176-66, 176-69, 176-70, 176-81, 176-83, and 176-84) Accordingly, the motion to seal Dkt. Nos. 176-42 to 176-77 is granted.[13]

Exhibit 103 (Dkt. No. 176-78) contains information regarding Locus's internal accounting practices, including how Locus tracks outstanding invoices. The motion to seal is denied as to Exhibit 103, because Locus has not explained how disclosure of this information could cause it harm.

### 5.    Jawadi Expert Report and Accompanying Exhibits

Plaintiff seeks sealing as to Exhibit 1 to the deposition of Jay Jawadi (Dkt. No. 176-81), which is Jawadi's 223-page expert report (the "Jawadi Report"). (See Jt. Sealing Ltr., Ex. A (Dkt. No. 167-1) at 21-22)

---

[13]  The same ruling applies to Exhibits 71, 80, 81, 84, and 96 to the Pierce deposition (Dkt. Nos. 177-17 to 177-21), which are duplicates of Exhibits 71, 80, 81, 84, and 96 to the September 1, 2023 Duplan deposition.

Plaintiff has not sought sealing as to the transcript of Jawadi's deposition, which is on the public docket and which has not been redacted. (See Dkt. No. 176-80) The deposition contains a detailed discussion of the Jawadi Report. Indeed, at various points during Jawadi's deposition, portions of the Jawadi Report are read verbatim into the record. (See, e.g., id. at 171-173) Although Locus has not addressed the seventy-five exhibits introduced at Jawadi's deposition in its sealing motion, it filed all but one of these exhibits under seal. (See Dkt. Nos. 173-5 to 173-84)

Given these circumstances, the motion to seal the Jawadi Report and its accompanying exhibits is denied without prejudice. Any new motion to seal these materials will be filed by December 20, 2024. Any such motion will contain document-level justification for the proposed sealing or redactions, and will explain why those redactions are necessary to preserve "higher values" and are narrowly tailored to serve that purpose. In determining whether to seek sealing or redaction, Plaintiff is directed to consider whether the information at issue is already on the public docket, as is the case with the Jawadi deposition transcript.

### 6.    Pierce Deposition and Accompanying Exhibits

Plaintiff seeks sealing as to portions of the deposition of Todd Pierce (Dkt. No. 177-2) and ten exhibits introduced during the Pierce deposition. (See Jt. Sealing Ltr., Ex. A (Dkt. No. 167-1) at 22-25) As to the deposition, Plaintiff seeks to seal testimony concerning

1. Pierce's medication (Pierce Dep. (Dkt. No. 177-2) at 15);

2. EIM's functionality and capabilities (id. at 20-21, 79-80, 84);

3. the Pomeranz expert report, Locus's business practices, and organizational roles at the Company (id. at 52-53, 59, 98-107, 113-15, 118-19, 124-26, 130-43, 147-49, 153-56);

4. the alleged trade secrets disclosed in the Honeywell RFP (id. at 71-75, 108-09);

5. Locus's damages — including damages figures and financial projections set forth in Locus's mediation statement — as well as Locus's efforts to secure third-party contracts (id. at 88-90, 157-62);

6. Locus's research and development costs and detailed records of how Locus employees allocated their time and efforts (id. at 91-96); and

7. Locus's bidding on third-party RFPs (id. at 163-74, 180-82).

(Jt. Sealing Ltr., Ex. A (Dkt. No. 167-1) at 22)

The motion to seal testimony concerning Pierce's medication is granted. Courts in this District regularly seal medical information, including the medical information of non-party witnesses. See, e.g., Robinson v. De Niro, No. 19CV9156LJLKHP, 2022 WL 2952071, at *2 (S.D.N.Y. July 26, 2022); Valentini v. Grp. Health Inc., No. 20-CV-9526 (JPC), 2020 WL 7646892, at *2 (S.D.N.Y. Dec. 23, 2020).

In his testimony concerning EIM's functionality and capabilities, Pierce provides a high-level description of EIM's geographic information system capabilities,[14] acknowledges that Honeywell would benefit from improvements to EIM, and describes "a few minor tweaks" to a "small part of EIM." (Pierce Dep. (Dkt. No. 177-2) at 20-21, 79-80, 84) Plaintiff has not explained how release of this vague information would cause it competitive harm. Accordingly, this Court is not in a position to make "specific, on-the-record findings that higher values necessitate a narrowly tailored sealing," Lugosch, 435 F.3d at 126, and the motion to seal this testimony is denied.

The motion to seal Pierce's testimony regarding the Pomeranz expert report is granted, because that testimony identifies the information comprising Plaintiff's alleged trade

---

[14] A geographic information system allows a user to see data on a geographical map.

secrets, including diagrams detailing how Locus's software operates and screenshots from the EIM software.

As to Pierce's testimony concerning the trade secrets disclosed in the Honeywell RFP, the motion to seal is granted as to pages 71-75, because in these pages Pierce gives detailed testimony concerning the screenshots of EIM and data-flow diagrams shown in the Honeywell RFP, and explains how a competitor could exploit that information. See Kewazinga, 2021 WL 1222122, at *6. The motion to seal is denied as to pages 108 and 109, however, because the document discussed at that point in the transcript was not part of the Honeywell RFP, and reflects "public domain knowledge." (Pierce Dep. (Dkt. No. 177-2) at 108-09)

The motion to seal is granted as to Plaintiff's damages figures and financial projections. (See id. at 88-90, 157-62) This portion of Pierce's testimony addresses Exhibit 42 to the Afzal Deposition (Dkt. No. 175-44), which was created for purposes of mediation.

The motion to seal is also granted as to testimony regarding Plaintiff's research and development costs. (See Pierce Dep. (Dkt. No. 177-2) at 91-96) It is well-established that such information is properly sealed. See Kewazinga, 2021 WL 1222122, at *6.

Finally, the motion to seal is granted as to portions of Pierce's testimony discussing Locus's internal communications regarding bidding on third-party RFPs and RFIs. (See id. at 163-74, 180-82) As discussed earlier, disclosure of Locus's bidding practices and strategies would "'provide valuable insights into [the] company's current business practices that a competitor would seek to exploit.'" Louis Vuitton Malletier, 97 F. Supp. 3d at 511 (quoting Encycl. Brown Prods., 26 F. Supp. 2d at 614).

Plaintiff also seeks sealing as to ten exhibits used at the Pierce deposition. Nine of these exhibits are duplicates of documents that this Court has already directed be sealed.[15] As to the one remaining exhibit — Exhibit 53 (Dkt. No. 177-9) — the motion to seal is denied. Exhibit 53 is publicly available on the internet, was not part of the Honeywell RFP, and reflects "public domain knowledge." (Pierce Tr. (Dkt. No. 177-2) at 108-09; see also supra n.12)

### 7. Alexander Deposition and Accompanying Exhibits

Plaintiff seeks to seal portions of the deposition of Dan Alexander (Dkt. No. 177-26) and eight exhibits used at that deposition. (See Jt. Sealing Ltr., Ex. A (Dkt. No. 167-1) at 25-28) As to the deposition, Plaintiff seeks to seal testimony concerning (1) Locus's pricing model (pages 58-60, 109-11); and (2) the disclosure of Locus's pricing information in the Honeywell RFP. (Id. at 25)

The testimony at pages 58-60 and 109-11 cited by Plaintiff does not address Locus's pricing model, however. Instead, this testimony concerns Exhibits 6 and 15 to the Alexander deposition (Dkt. Nos. 177-32 and 177-37), which Plaintiff contends contain trade secrets. (See Jt. Sealing Ltr., Ex. A (Dkt. No. 167-1) at 27-28) Exhibit 6 is a spreadsheet detailing the various roles a user can have within Locus's software and the corresponding permissions that user would have within the software. Exhibit 15 is a spreadsheet that provides an overview of the number of records that Locus hosted for Honeywell, broken down by record type, and information about how Locus charges for hosting that data. Because this Court has already found that Locus has plausibly stated a trade secret claim as to these materials, the

---

[15] Pierce Deposition Exhibits 41 and 42 are duplicative of Exhibits 41 and 42 to the August 17, 2023 Afzal deposition, and Pierce Deposition Exhibits 46, 47, 71, 80, 81, 84, and 96 are identical to the corresponding exhibits to the September 1, 2023 Duplan deposition. (See supra n.6, n.7, n.11, n.13)

motion to seal is granted.[16]  The motion to seal is also granted as to the Locus pricing

information contained in the Honeywell RFP.  See Hesse, 2013 WL 174403, at *2.

As to Alexander Deposition Exhibits 2, 4, and 5 (Dkt. Nos. 177-28, 177-30, 177-

31), the motion to seal is granted, because these documents contain Locus's alleged trade

secrets.[17]  Exhibit 2 is a portion of the Honeywell RFP in which Plaintiff's alleged trade secrets

were disclosed, and Exhibits 4 and 5 contain data and process flow diagrams showing the

internal functioning of Locus's software.  (See Sept. 30, 2022 Order (Dkt. No. 95) at 31)  The

motion to seal is also granted as to Exhibits 15 and 16 (Dkt. Nos. 177-37 and 177-38), because

these documents contain details of Locus's pricing practices and the prices it charged Honeywell.

"[I]f revealed, [this information might] 'provide valuable insights into [Locus's] current business

practices that a competitor would seek to exploit.'"  Louis Vuitton Malletier, 97 F. Supp. 3d at

511 (quoting Encycl. Brown Prods., 26 F. Supp. 2d at 614); see also Hesse, 2013 WL 174403, at

*2.

### 8.    Rich Expert Report

Plaintiff seeks to seal the report of Defendant's expert, David Rich (Dkt. No. 177-

45) (the "Rich Report"), which analyzes whether the Locus-related information in the Honeywell

RFP was proprietary to Locus.  (See Jt. Sealing Ltr., Ex. A (Dkt. No. 167-1) at 28)  Dr. Rich

identifies the categories of alleged trade secrets disclosed in the Honeywell RFP, describes the

conclusions of Plaintiff's expert Hal Pomeranz, and argues that the alleged trade secrets cited by

---

[16]  The same ruling applies to Exhibit 13 to the Pomeranz Deposition (Dkt. No. 177-65) and
Exhibit 13 to Plaintiff's Rule 56.1 Counterstatement (Dkt. No. 179-16), which are duplicates of
Alexander Deposition Exhibit 15.
[17]  The same ruling applies to Exhibits 10 and 16 to the Pomeranz deposition (Dkt. Nos. 177-62,
177-68), and Exhibit 40 to Plaintiff's Rule 56.1 Counterstatement (Dkt. No. 179-43), which are
duplicates of Alexander Deposition Exhibit 2.

Locus were actually all common knowledge in the environmental data management industry. The categories of the alleged trade secrets were already listed in the Complaint (see Cmplt. (Dkt. No. 1) ¶ 119), however, and in rendering his opinions Dr. Rich does not reveal the details of those alleged trade secrets. Accordingly, the motion to seal the Rich Report is denied.

### 9.    **Pomeranz Deposition and Accompanying Exhibits**

Plaintiff seeks to seal portions of the deposition of its expert, Hal Pomeranz (Dkt. No. 177-48), and ten exhibits used at that deposition. (See Jt. Sealing Ltr., Ex. A (Dkt. No. 167-1) at 28-32) As to the deposition transcript, Plaintiff contends that redactions are necessary on pages 48-61, 65-78, 80-81, 84-85, 87, 91-112, 115-24, 126-36, 139-41, 143-44, 146-48, 151-68, 170-96, 200-04, and 207-21 because the testimony on these pages is about "the trade secrets exposed in the [Honeywell] RFP and [the] location [of the trade secrets] within the [Honeywell] RFP[.]" (Id. at 28-29)

The motion to seal is denied as to pages 48-61, because in this testimony Pomeranz merely discloses his methodology and high-level conclusions that Locus's information constitutes trade secrets. Pomeranz's discussion of the alleged trade secrets is similar to the descriptions of the trade secrets set forth in the Complaint. (See Cmplt. (Dkt. No. 1) ¶ 119)

The motion to seal is granted as to pages 65-78, because specific examples of alleged trade secrets (such as process flow diagrams) are discussed at this point in the testimony, along with the location of this material in the Honeywell RFP.

The motion to seal is denied as to pages 80-81, 84-85, and 87, because this testimony merely reveals that one category of alleged trade secrets is process flow diagrams, a fact that is disclosed in the Complaint. (See Cmplt. (Dkt. No. 1) ¶ 119)

The motion to seal is granted as to pages 91-112 and 115-24, because this testimony discusses — in far greater detail than what is disclosed in the Complaint — the alleged trade secrets that were disclosed in the Honeywell RFP and how a competitor could utilize that information.  See Kewazinga, 2021 WL 1222122, at *6.  For example, Pomeranz testifies about details of Locus's pricing (Pomeranz Dep. (Dkt. No. 177-48) at 94) and provides specific examples of process flow diagrams (id. at 104-06).

The motion to seal is denied as to pages 126-30, because this testimony merely addresses whether Pomeranz independently verified certain aspects of his report.

The motion to seal is granted as to pages 131-41 because this testimony includes a detailed discussion of the alleged trade secrets contained in the Honeywell RFP.  For example, Pomeranz testifies about a table listing record types contained in a Locus database, which could help a competitor understand the structure of the database and the scale of Locus's project with Honeywell.  (Id. at 134-35)

The motion to seal is denied as to pages 143-44, because this testimony merely addresses whether Mr. Pomeranz independently verified one aspect of his report.  To the extent Plaintiff argues that Pomeranz's testimony reveals trade secrets, Pomeranz's statements are akin to assertions set forth in the Complaint.  (See Cmplt. (Dkt. No. 1) ¶ 119)

The motion to seal is granted as to pages 146-48, 151-68, and 170-96, because this testimony discusses — in greater detail than what is disclosed in the Complaint — the alleged trade secrets that were disclosed in the Honeywell RFP and how a competitor could utilize that information.  See Kewazinga, 2021 WL 1222122, at *6.  For example, Pomeranz testifies about a spreadsheet detailing the roles of users within Locus's software and how a competitor could use that information (Pomeranz Dep. (Dkt. No. 177-48) at 156), the exact

breakdown between roles and data types in Locus's database (id. at 158-59), and screenshots of Locus's software (id. at 184).

The motion to seal is denied as to pages 200-04, because this testimony merely addresses whether Pomeranz independently verified certain aspects of his report.

The motion to seal is likewise denied as to pages 207-16, because this testimony addresses whether Pomeranz independently verified certain aspects of his report, and discusses — at a high level — the materials that Pomeranz relied on in drafting his report.

The motion to seal is granted as to pages 217-21 because that testimony describes the alleged trade secrets contained in the Honeywell RFP in significantly more detail than is set forth in the Complaint. For example, Pomeranz explains, in detail, his conclusions that Locus's trade secrets were disclosed, why that information is critical to Locus, and how a competitor could exploit this information.

As to the ten Pomeranz Deposition exhibits for which Plaintiff seeks sealing, all of them (Pomeranz Deposition Exhibits 2, 7, 8, 9, 10, 13, 14, 15, 16, and 18) have been addressed above. (See supra n.9, n.11, n.12, n.15, n.16)

### 10.    Defendant's Rule 56.1 Statement Exhibits 14, 15, and 16

Plaintiff seeks to seal Exhibits 14, 15, and 16 (Dkt. Nos. 177-71 to 177-75) to Defendant's Local Rule 56.1 Statement. (See Jt. Sealing Ltr., Ex. A (Dkt. No. 167-1) at 32-33) Exhibits 14 and 15 are reports drafted by Locus's accountants which describe the internal accounting controls in place at Locus and which disclose, inter alia, detailed information about Locus's network infrastructure, network security measures, and data process flow diagrams. Exhibit 16 is a similar report prepared by a cybersecurity compliance firm. That report assesses Locus's network security measures and whether its system has vulnerabilities. The Court

concludes that disclosure of this information would present a risk to Locus's network security. Accordingly, these exhibits are properly sealed.[18]

**11.    February 26, 2024 Afzal Deposition and Accompanying Exhibits**

Plaintiff seeks to seal portions of the February 26, 2024 deposition of Ben Afzal (Dkt. No. 177-75) and seven exhibits used at that deposition. (See Jt. Sealing Ltr., Ex. A (Dkt. No. 176-1) at 33-36) The testimony Plaintiff seeks to seal concerns

1.  a damages chart that shows Locus's research and development costs and detailed records showing how individual employees at Locus spend their time and efforts at work (Feb. 26, 2024 Afzal Dep. (Dkt. No. 177-75) at 15-18, 20-89, 91-112);

2.  a damages spreadsheet that was used to create the damages chart (id. at 117-27);

3.  Locus's financial audits (id. at 128-35); and

4.  a confidential mediation statement (id. at 137-47).

(Id. at 33)

The motion to seal is granted as to the testimony concerning the damages chart, the damages spreadsheet, and the mediation statement, because all of these materials were created for use in a confidential mediation. See Kewazinga, 2021 WL 1222122, at *6; Glens Falls Newspapers, Inc., 160 F.3d at 858.

The motion to seal is also granted as to pages 128-35, because this testimony concerns Plaintiff's internal financial statements for the period from 2018 to 2021. As discussed above, Locus is not a public company and its internal financial records are not public. Accordingly, sealing is appropriate.

---

[18] The same ruling applies to Exhibits 37, 65.1, 65.2, and 65.3 to Plaintiff's Rule 56.1 Response and Statement of Additional Facts (Dkt. Nos. 179-40, 179-68, 179-69, and 179-70), which are duplicates of Exhibits 15 and 16 to Defendants' Local Rule 56.1 Statement.

As to the motion to seal exhibits, Exhibits 3-8 from the February 26, 2024 Afzal deposition have been addressed above. (See supra n.6, n.9, n.12) As to the non-duplicative exhibits — Exhibits 2 and 10 — the motion to seal is granted. Exhibit 2 (Dkt. No. 177-77) was created for purposes of mediation, and contains detailed information concerning Plaintiff's research and development costs as well as its alleged trade secrets. Exhibit 10 (Dkt. No. 177-85) was created for purposes of settlement and is subject to Fed. R. Evid. 408. See also Glens Falls Newspapers, Inc., 160 F.3d at 858.

### 12.    Exhibits Attached to Plaintiff's Rule 56.1 Counterstatement

Plaintiff seeks to seal or redact twenty-eight exhibits attached to its Local Rule 56.1 Counterstatement. (See Jt. Sealing Ltr., Ex. A (Dkt. No. 167-1) at 36-44) The Court addresses below the non-duplicative exhibits.

Plaintiff's Exhibit 1 (Dkt. No. 179-2) contains a chart showing the alleged trade secrets at issue, including detailed descriptions of the alleged trade secrets along with an explanation as to how disclosure of these trade secrets could be used by Locus's competitors. The motion to redact Plaintiff's Exhibit 1 is granted.

Plaintiff's Exhibit 6 is the deposition of Rakesh Singh. (See Dkt. No. 179-8) Plaintiff seeks to redact testimony on pages 61 and 62 of the Singh deposition concerning certain aspects of EIM's functionality and its capacity to run certain queries. (See Jt. Sealing Ltr., Ex. A (Dkt. No. 167-1) at 36-37) The motion to seal is granted because the testimony at issue discloses alleged trade secrets and a potential vulnerability in Plaintiff's software that a competitor could seek to exploit.

Plaintiff's Exhibit 22 (Dkt. No. 179-25) contains detailed pricing information that traces changes in Locus's billing rates over time. This document will likewise be sealed.

Plaintiff's Exhibit 28 (Dkt. No. 179-31) discloses detailed pricing and financial information for the RIMS project and certain of Locus's business strategies. Disclosure of this information would offer a competitor valuable insight into Locus's current business practices. Accordingly, Exhibit 28 will be sealed. See Louis Vuitton Malletier, 97 F. Supp. 3d at 511.

Plaintiff's Exhibits 41-43, and 46 (Dkt. Nos. 179-44 to 179-46 and 179-49) contain examples of the alleged trade secrets set forth in the Honeywell RFP. Exhibits 41, 43, and 46 contain process flow diagrams the reveal the internal workings of Locus's software, Exhibit 42 contains details of the user role and permissions structure within Locus's software. Accordingly, these exhibits will be sealed. See Kewazinga, 2021 WL 1222122, at *6.

Plaintiff's Exhibit 55 (Dkt. No. 179-58) is a Locus invoice to Honeywell for the RIMS project that contains detailed information about how much Plaintiff charged for various change orders submitted by Defendant. This pricing information will be sealed because Locus's competitors could seek to exploit it to undercut Locus's pricing. See Hesse, 2013 WL 174403, at *2.

Plaintiff's Exhibit 56 (Dkt. No. 179-59) is an email chain between Locus and Honeywell employees that contains detailed information concerning Locus's EIM software as well as pricing information for implementation of the RIMS project, for subscription services, and for licensing, maintenance, and data migration covering a five year period. Disclosure of this information could offer competitors insight into Locus's business practices. Exhibit 56 will be sealed. See Louis Vuitton Malletier, 97 F. Supp. 3d at 511.

Plaintiff's Exhibit 64 (Dkt. No. 179-67) is a detailed log of time entries for Locus employees who performed work for Honeywell on the RIMS project. Exhibit 64 reveals the billing rates Locus charged for its employees and the amount of time that Locus employees spent

on the RIMS project.  Disclosure of this information would offer Locus's competitors insight into Plaintiff's billing rates and internal allocation of resources.  Accordingly, Exhibit 64 will be sealed.

Plaintiff's Exhibit 69 (Dkt. No. 179-74) is a spreadsheet containing calculations for Locus's total EIM development costs, with over 400,000 rows of accompanying data.  The spreadsheet was created for purposes of settlement, reveals details of Locus's research and development investments, and contains hundreds of thousands of entries documenting billing rates and time spent on various Locus projects.  Exhibit 69 will be sealed.

**B.**    **Defendant's Sealing Requests**

Defendant moves to seal seven documents and deposition testimony concerning these documents.  (See Jt. Sealing Ltr. (Dkt. No. 167) at 4-5)  According to Defendant, five of these documents contain "sensitive and confidential business information, including cost savings data, vendor selection strategy and discussions, and internal investigative materials concerning a former employee's performance."  (Id. at 4)  The two remaining documents contain "cost and pricing information belonging to non-party Earthsoft."  (Id. at 5)

Defendant seeks to seal Exhibit 7 to the French deposition (Dkt. No. 175-53), which is an email chain that contains details regarding Honeywell's cost savings data, vendor selection strategy, and competitive analyses.  Courts in this district routinely seal such information.  See, e.g., Playtex Prod., LLC v. Munchkin, Inc., No. 14-CV-1308 (RJS), 2016 WL 1276450, at *12 (S.D.N.Y. Mar. 29, 2016) (granting sealing motion where summary judgment briefing referenced "confidential and sensitive business information, including sales and costs information, presentations, merger discussions, and competitive analyses and product testing").

Defendant also seeks to seal three identical exhibits: (1) Exhibit 3 to the Rich deposition (Dkt. No. 177-47); (2) Exhibit 3 to the deposition of William Hague (Dkt. No. 177-89); and (3) Exhibit 6 to the Singh deposition (Dkt. No. 179-9). (See Jt. Sealing Ltr. (Dkt. No. 167) at 4)  Each of these exhibits is an internal Honeywell memorandum assessing whether Honeywell should terminate its relationship with Locus and issue an RFP for the purpose of replacing Locus and its software.  Disclosure of this internal Honeywell memorandum would reveal Honeywell's cost savings data, vendor selection strategy, and competitive analyses. These documents — and the deposition testimony addressing these documents (Rich Dep. (Dkt. No. 177-44) at 75:2-4, 75:9-10, 75:22-24, 76:5-77:4; Hague Dep. (Dkt. No. 177-86) at 58:2-64:15, 65:8-82:24; Singh Dep. (Dkt. No. 179-8) at 57:25-61:8, 61:24-62:10, 86:17-87:11, 87:17-88:24, 89:20-90:14, 91:6-97:14, 98:6-15, 100:9-101:15) — will be sealed.

Exhibit 7 to Plaintiff's Local Rule 56.1 Counterstatement (Dkt. No. 179-10) is an internal Honeywell email chain a containing similar discussion, and detailing a competitive analysis, cost savings data and vendor selection strategies.  This exhibit will be sealed.

Defendant also seeks to seal Exhibit 1 to the deposition of Brian Taylor (Dkt. No. 179-6), portions of the Taylor deposition (Dkt. No. 179-5), and Exhibit 39 to Plaintiff's Rule 56.1 Counterstatement (Dkt. No. 179-42).  According to Defendant, these exhibits and the deposition testimony relate to "internal investigative materials concerning a former employee's performance" and should be sealed.

Documents related to an internal investigation are not invariably subject to sealing. See, e.g., Lytle v. JPMorgan Chase, 810 F. Supp. 2d 616, 624 (S.D.N.Y. 2011) (denying motion to redact "the names of the individuals whose conduct [JPMorgan Chase] investigated in response to Lytle's complaints regarding alleged harassment and discrimination"); Ottati v. City

of Amsterdam, No. 606CV1370NPMDEP, 2010 WL 11570492, at *1 (N.D.N.Y. Jan. 25, 2010) (granting motion to unseal, made after the filing of summary judgment motions in a sex discrimination case, defendant's internal investigation report concerning plaintiff's allegations); Byrne v. Yale Univ., Inc., No. 3:17-CV-1104 (VLB), 2020 WL 1820761, at *2-3 (D. Conn. Apr. 10, 2020) (denying motion to seal an internal investigation report because although "preserving confidentiality to promote robust internal investigations" was a "compelling" interest, sealing the entire report was not a "narrowly tailored" remedy).

Here, neither side has explained the relevance of documents related to the internal investigation. Moreover, Defendant has not made any argument or cited any case law concerning this issue. Accordingly, this Court is not in a position to make "specific, on-the-record findings that higher values necessitate a narrowly tailored sealing." Accordingly, the motion to seal is denied without prejudice. Lugosch, 435 F.3d at 126.

If Defendant wishes to further pursue its motion to seal the internal investigation-related materials, it will file a renewed motion by December 20, 2024. Any such renewed motion will explain the relevance of the internal investigation materials, include proposed redactions to Dkt. Nos. 179-5, 179-6, and 179-42, and will explain why those redactions are necessary to preserve "higher values" and are narrowly tailored to serve that purpose.[19]

Defendant also seeks to seal Exhibit 14 to the Alexander deposition (Dkt. No. 177-36), Exhibit 12 to Plaintiff's Local Rule 56.1 Counterstatement (Dkt No. 179-15), and Exhibit 38 to Plaintiff's Local Rule 56.1 Counterstatement (Dkt. No. 179-41). These documents contain the cost and pricing information of non-party Earthsoft. The "privacy interests of third

---

[19] In proposing redactions, Defendant should confirm that the relevant information is not contained in a document already on the public docket. For example, Dkt. No. 175-41 (which has been publicly filed) contains certain information that is reproduced in Dkt. No. 179-6.

parties" can justify the sealing of documents.  See Kewazinga, 2021 WL 1222122, at *3.  The

Court concludes that the sealing of Earthsoft's information is appropriate.

## **CONCLUSION**

The parties' motions to seal are granted in part and denied in part as set forth

above.  By **December 20, 2024**, the parties will make the filings on the public docket necessary

to comply with this Order.  The Clerk of Court is directed to terminate the motion (Dkt. No.

167).

Dated: New York, New York
      December 13, 2024

          SO ORDERED.

          Paul G. Gardephe
          United States District Judge